IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LINDA L. FINGER,

   Plaintiff/Counter-Defendant,

           v.

ORKIN, INC. d/b/a ORKIN PEST
CONTROL,

   Defendant/Counter-Plaintiff.

Case No. 08 C 0424

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Linda L. Finger (hereinafter, "Finger") brings this action against Defendant Orkin, Inc. (hereinafter, "Orkin") under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621(e) *et seq.* (the "ADEA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"). In her Complaint, Finger seeks to hold Orkin, her former employer, liable for age discrimination, sex discrimination, and two counts of retaliation. Orkin now moves for summary judgment on all counts, and also moves to strike certain portions of Finger's responses. For the following reasons, the Motion to Strike is **granted in part and denied in part**, and the Motion for Summary Judgment is **granted**.

## I. BACKGROUND

Orkin provides pest control services for residential and commercial customers. Finger was employed by Orkin from 1995 until

2000 and again from 2002 through early 2006 as a Branch Manager in Colorado, Oregon, Utah, and Pennsylvania. Def.'s Statement of Facts ("Def.'s SOF") ¶¶ 1-9. In February 2006, Finger transferred to the Illinois Region and became the Branch Manager of Orkin's Oak Park, Illinois branch (the "Oak Park Branch"). Finger's date of birth is July 22, 1943. At all times relevant to her Complaint, Finger was the Branch Manager of the Oak Park Branch, and Tiziano Del Guanto ("Del Guanto"), Region Manager for the Illinois Region, was her direct supervisor. Finger was employed as Branch Manager of the Oak Park Branch from February 2006 until September 2007. Between February 2006 and May 2007, four Oak Park Branch employees resigned, and one employee voluntarily transferred. *Id.* at ¶¶ 10-19, 48. During the same time period, a combined total of four employees quit or were terminated in the rest of the Illinois region (13 other branches). *Id.* at ¶ 48. Between May 2007 and August 21, 2007, the Oak Park Branch lost two additional employees. Peura Decl. ¶¶ 14-15. Del Guanto and his assistant, Robbie Peura ("Peura"), addressed the turnover at the Oak Park Branch, along with other managerial issues, with Finger on multiple occasions both in person and in written reports. *See, e.g.,* May 2007 Coaching & Counseling Mem. (Del Guanto Decl. Ex. 1); August 2007 Follow-Up Mem. (Pl.'s July 25, 2008 Dep. Ex. 29).

In addition to addressing personnel issues, Del Guanto prepares annual written performance evaluations and meets with branch managers to review the evaluations. Def.'s SOF ¶ 32. In

April 2007, Del Guanto prepared Finger's evaluation for the Year 2006, and Finger received a pay raise of 3.49 percent. *Id.* at ¶¶ 33-35; Pl.'s July 8, 2008 Dep. 208-209. However, Del Guanto forgot to review the Year 2006 evaluation with Finger, and Finger did not remind him. *Id.* During this review period, Del Guanto also did not meet with at least one other branch manager. Del Guanto Suppl. Decl. ¶ 3.

In a May 2007 written Coaching and Counseling Memorandum, Del Guanto addressed the turnover at the Oak Park Branch and nine other managerial problems which he requested that Finger correct. *See* Del Guanto Decl. ¶¶ 19-22; Del Guanto Decl. Ex. 1. Among other issues, Finger was reprimanded for permitting subordinates to direct the work of other employees and for allowing them to work on tasks specifically assigned to her by Del Guanto. The Memorandum stated that Finger failed to account for absent employees and to complete new hire paperwork. Del Guanto also noted that Finger had not provided factual responses when questioned about the above issues. Del Guanto and Finger discussed the Coaching and Counseling Memorandum at a meeting on May 20, 2007 and finished their discussions on June 4, 2007.

On May 31, 2007, the day after she received the Coaching and Counseling Memorandum, Finger contacted Orkin's Human Resources Department and told Mark Kraus ("Kraus") that Del Guanto had not reviewed her Year 2006 performance evaluation with her, which she believed showed that Del Guanto was treating her differently from

other branch managers.  Def.'s SOF ¶ 53; Pl.'s July 8, 2008 Dep. 164-174.  Kraus said that he was busy with an urgent situation and that he would call Finger later that week.  Before she heard back from Kraus, on June 5, 2007, Finger e-mailed Vye Ladd ("Ladd"), Vice President of Human Resources, regarding her May 31 complaint to Kraus.  The same day, Kraus called Finger and suggested that she could transfer to another branch, an option she subsequently declined.  Ladd also responded to Finger's e-mail to confirm her communications with Kraus.  Def.'s SOF ¶¶ 55-58.

On June 7, 2007, Kraus, Finger, and Del Guanto met to review the Coaching and Counseling Memorandum and to discuss Finger's complaint that Del Guanto had not met with her to review her Year 2006 evaluation.  *Id.* at ¶¶ 59-60.  At the end of the meeting, Finger and Del Guanto told Kraus that they were willing to work on their communication.  Later in June 2007, Human Resources Representatives Ladd and Kraus again met with Finger at the Oak Park Branch.  At this time, Finger did not discuss any complaints regarding Del Guanto.  Pl.'s July 8, 2008 Dep. 213-218.

On June 8, 2007, Finger filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"), alleging that she suffered discrimination on the basis of her sex and age and that she was retaliated against by being subjected to different terms and conditions of employment and by being disciplined on June 4, 2007.  Def.'s SOF ¶ 61.  The Court presumes that Finger's retaliation claim is based on her allegation that Del Guanto made

wrongful accusations about her managerial performance during the second meeting to discuss the Coaching and Counseling Memorandum on June 4, 2007. *See id.* at ¶¶ 54, 61; Pl.'s Statement of Facts ¶ 17. This meeting was held after Finger's initial complaint about Del Guanto to Human Resources on May 31.

On August 21, 2007, Del Guanto and Finger met to discuss Finger's progress correcting the issues outlined in the May 2007 Coaching and Counseling Memorandum. *See* Def.'s SOF at ¶¶ 64-67; Pl.'s July 25, 2008 Dep. Ex. 29*.* During this meeting and in a written follow-up memorandum, Del Guanto informed Finger that she had improved in five of the nine problem areas and that she had until the end of September 2007 to correct the remaining performance issues. During this meeting, Del Guanto also reviewed Finger's Year 2006 performance evaluation.

On August 23, 2007, Finger called in sick and did not return to work at Orkin. Def.'s SOF ¶ 68. Finger resigned on September 4, 2007. *Id.* at ¶ 69. Two days later, Orkin sent Finger a letter requesting that she rescind her resignation and accept an unconditional offer to return to work as Branch Manager of the Oak Park Branch, an offer which Finger declined. *Id.* at ¶ 70.

On September 13, 2008, Finger filed a second Charge with the EEOC, alleging that she was constructively discharged in retaliation for engaging in protected activity. *Id.* at ¶ 71.

## II.  **ANALYSIS**

### A.  **Motion to Strike**

Orkin moves to strike numerous paragraphs in Finger's response to its statement of facts on the grounds that they are unresponsive, conclusory, unsupported by admissible evidence, or contradicted by deposition testimony.  Responses that avoid the actual statement presented, or provide a kind of "yes, but" explanation, are impermissible under Local Rule 56.1(b).  *See Flores v. Chicago Transit Authority*, No. 5 C 6503, 2006 WL 2868904, *1 (N.D.Ill., Oct. 4, 2006).  Likewise, unresponsive denials and responses that include additional facts do not comply with Local Rule 56.1 and ordinarily must be disregarded.  *Id.*

Orkin moves to strike several of Finger's responses.  For example, in paragraphs 12 and 13, Finger denies Orkin's statements regarding one employee's resignation and another employee's transfer based on Finger's perception of the reasons why each of the employees left the Oak Park Branch.  The Court agrees with Orkin that Finger's responses are nonresponsive, and the facts of the employees' departures are undisputed by the evidence.  Thus, Finger's responses are stricken.

The Court need not address each of Finger's responses detailed in Orkin's motion to strike.  The Court has ample experience identifying such unresponsive and unsupported answers and deeming unrebutted facts admitted.  The above statement of facts fully accounts for the Court's review of the parties' submissions, and no

further explication of these factual statements is necessary. Thus, Orkin's Motion to Strike is **granted to this extent** and otherwise denied.

### B. Motion for Summary Judgment

Orkin contends that it is entitled to a summary judgment order on all of Finger's claims. Orkin argues that Finger failed to establish a *prima facie* case of discrimination or retaliation. Orkin also argues that Finger's claims regarding an adverse employment action and retaliation must be dismissed because Finger failed to raise them in her EEOC charges.

### 1. *Standard of Review*

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view all the evidence and any reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir., 2000). The adverse party, however, may not rest upon the mere allegations or denials in the pleadings, but "must set forth

specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." FED. R. CIV. P. 56(e).

## *2. Discussion*

Title VII prohibits any workplace discrimination with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  Similarly, the ADEA makes it unlawful for an employer to discriminate against an employee because of his or her age. 29 U.S.C. § 623(a)(1).  Under both Title VII and the ADEA, Finger may establish her discrimination and retaliation claims through either the direct or indirect methods of proof. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641 (7th Cir., 2005) (ADEA); *Volovsek v. Wisconsin Dept. of Agr., Trade and Consumer Protection*, 344 F.3d 680, 689 (7th Cir., 2003) (Title VII).

Using the direct method of proof, a plaintiff must show that (1) she engaged in statutorily protected activity, (2) she suffered an adverse action taken by the employer, and (3) there was a causal connection between the two. *Lucas v. PyraMax Bank*, *FSB*, 539 F.3d 661, 667 (7th Cir., 2008).  In the absence of direct or circumstantial evidence, the indirect method can be used to create a presumption of retaliation or discrimination.  In order to proceed using this method, a plaintiff must establish a *prima facie* case, specifically that:

> (1) she is a member of a protected class (or
> performed the protected act of filing a
> complaint); (2) she is qualified for the
> position or, if already employed, has met the
> defendant's legitimate work expectations; (3)
> the defendant took adverse employment against
> her; and (4) the defendant treated similarly
> situated employees outside of the protected
> class (or who did not complain) more
> favorably.

*Faas*, 532 F.3d at 641; *Volovsek*, 344 F.3d at 692. A plaintiff's failure to establish any of the elements of a *prima facie* case defeats her claim and entitles the defendant to summary judgment. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 862 (7th Cir., 2005). If instead the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to provide nondiscriminatory reasons for the employment action. *Volovsek*, 344 F.3d at 692. If the defendant provides a nondiscriminatory reason, the plaintiff must show that the articulated rationale is pretext and that "discrimination was the real reason" for the adverse employment action. *Id.*

In this case, Finger has not provided any direct evidence of discrimination or retaliation because of her gender, age, or protected activities, thus the Court must determine whether she has established a *prima facie* case under the indirect method. The parties do not dispute that Finger, a female of over sixty years, falls within the protected classes of the ADEA (age) and Title VII (gender). The parties do dispute, however, whether Finger engaged in protected activity prior to her receipt of discipline. For

purposes of summary judgment only, the Court will presume that she did so and thus satisfied the first prong of the *prima facie* case.

### a. Materially Adverse Employment Action

In order to establish a *prima facie* case of either discrimination and retaliation, Finger must show that she suffered a materially adverse employment action. According to the Seventh Circuit, the Court "need look no further than this required element - and [Finger's] failure to satisfy it - to dispose of both claims." *Whittaker v. Northern Illinois University*, 424 F.3d 640, 647 (7th Cir., 2005).

Under Title VII and the ADEA, an adverse employment action "must materially alter the terms and conditions" of a plaintiff's employment. *Id.* at 648. Such actions generally involve the loss or reduction of pay or monetary benefits, but also can encompass "other forms of adversity." *Id.* at 647-48. Negative performance evaluations, written warnings, and reprimands do not constitute adverse employment actions unless such communications materially alter the terms and conditions of employment. *See id.* For example, the Seventh Circuit suggested that a reprimand that led to ineligibility for job benefits, such as promotion, transfer, or advantageous increases in responsibilities, could constitute a possible adverse action. *Id.*

Notably, the standard for adverse employment actions in retaliation claims is broader than that of discrimination claims. *Id.* In retaliation claims, an employer's adverse action is

actionable "if it would have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.*

The undisputed facts in this case establish that Finger cannot establish a *prima facie* case for either discrimination or retaliation because she has failed to allege any facts that could constitute an adverse employment action. Significantly, during the time that Finger was Branch Manager of the Oak Park Branch, she lost no pay or benefits, nor was she demoted, suspended, transferred, or terminated. Finger argues that she has shown an adverse action by evidence that Del Guanto disciplined her differently than other managers, interfered with her annual performance evaluation, usurped her supervisory authority, and closely surveilled her daily activities after she complained to Human Resources. Finger's claims, reduced to oral and written reprimands, fall short.

As a preliminary matter, the Court notes that the record does not show that Finger was disciplined differently than other managers. As discussed below, Finger points to no evidence that Del Guanto (or any other Orkin employee) disciplined her or interacted with her differently than other employees.

The remainder of Finger's arguments boil down to Finger's opinion that she was supervised improperly and disciplined unfairly. For example, Finger claims that, despite the fact that she received a pay raise, Del Guanto's failure to meet with her to review her written performance evaluation for the Year 2006

constitutes an adverse employment action. Finger presents no evidence that Del Guanto violated Orkin policy in failing to meet with her, that Del Guanto met with all of the other managers, or that the failure to meet with her had potential to adversely affect her performance or career opportunities. Likewise, Finger's complaints that Del Guanto usurped her authority and supervised her too closely constitute mere disagreements with Del Guanto's management style, not discrimination or retaliation. A plaintiff's claim that a supervisor overly scrutinized his or her work simply does not amount to a materially adverse employment action. *See, e.g., Banks v. Archer/America Wire*, No. 04 C 3026, 2005 WL 2007227, *14, n.8 (N.D.Ill., Aug. 17, 2005). Del Guanto's increased presence at the Oak Park Branch and his transfer of an employee without first consulting Finger may have been frustrating to Finger or even amounted to unwise management, but these facts do not constitute adverse employment actions.

Similarly, the Court rejects Finger's arguments that Del Guanto's performance evaluations and warnings constitute discrimination or retaliation. The law is clear that the mere receipt of a written warning does not constitute an adverse employment action. *Whittaker*, 424 F.3d at 648. Finger's complaints about unfair warnings amount only to her disagreement with Del Guanto's assessment of her conduct. However, even if Del Guanto's performance evaluation and warnings were ill-informed, the evidence presented does not raise doubts as to the reasonableness

of Orkin's request that Finger change her practices. *See Billups v. Methodist Hosp. of Chicago,* 922 F.2d 1300, 1304 (7th Cir., 1991). Without other supporting evidence, an employee's subjective perception that he or she was the victim of discrimination or retaliation is insufficient to preclude summary judgment. *See Abiyoe v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir., 1998).

Accordingly, because Finger has failed to show evidence of a materially adverse employment action, Finger's discrimination and retaliation claims must fail, and summary judgment is proper.

### b. *Defendant's Legitimate Work Expectations*

Even if Finger was able to establish an adverse employment action, which she cannot, her claims still would fail because she cannot establish the other elements of a *prima facie* case, including that she was meeting Orkin's legitimate work expectations. The undisputed evidence shows that, during the time that Finger was Branch Manager, the Oak Park Branch experienced significant employee turnover, losing seven employees in less than two years, a fact that concerned Orkin management. *See* Del Guanto Suppl. Decl. ¶ 6. While it is unclear as to how many of these employees, if any, left the Oak Park Branch as a result of issues with Finger, the personnel problems would give a reasonable employer cause to question its manager's performance and request that changes be made.

Furthermore, Orkin has provided ample evidence that Finger was failing to meet its legitimate expectations for its managers.

- 13 -

Finger was informed of the turnover problem at the Oak Park Branch as well as a number of specific issues with her management in the May 2007 Coaching and Counseling Memorandum. By August 2007, she has corrected only some of these issues, and two more employees left the Branch. In light of all of the evidence, the Court determines that Finger not established that she was meeting Orkin's legitimate work expectations.

### c. *Treatment of Similarly-Situated Employees*

Finally, even if Finger were able to show an adverse action and that she was meeting Orkin's expectations, she has failed to identify any evidence that Del Guanto (or anyone else at Orkin) disciplined or interacted with her differently than he dealt with other branch managers.

To support her claims of differential treatment, Finger submitted personnel records of other Orkin employees and a declaration with her conclusion that other branch managers were treated better. Finger Decl. ¶ 10; Finger Decl. Exs. 1-19. Finger did not, however, present any facts that would allow the Court to make any kind of meaningful comparison. Finger's conclusory assertion that other employees were treated more favorably, without specific instances of support, is insufficient to defeat summary judgment. *See Lucas v. Chicago Transit Authority,* 367 F.3d 714, 726 (7th Cir., 2004). Moreover, after independently reviewing the documents, the Court concludes that the personnel files do not support Finger's claims. For example, the documents show that Del

Guanto issued written discipline to male employees under the age 40 and did not meet with other managers to discuss their annual performance evaluations. Accordingly, Finger cannot establish that Orkin treated similarly-situated employees outside of her protected classification more favorably.

Therefore, because Finger fails to make out a *prima facie* case, the Court need not analyze whether Orkin has rebutted Finger's case. Given these facts and the summary judgment standard, this Court finds that this case involves no questions of material fact that preclude summary judgment.

## IV.  <u>CONCLUSION</u>

For the reasons stated herein, Defendant Orkin's Motion to Strike is **granted in part**, and Orkin's Motion for Summary Judgment is **granted.**

**IT IS SO ORDERED.**

_____
　　　Harry D. Leinenweber, Judge
　　　United States District Court

**DATE:**      1/15/2009